UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APRIL Y. TYLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-CV-01515-SEB-MJD |
| | ) | |
| CAROLYN COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff April Y. Tyler ("Tyler") requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Social Security Disability Insurance ("DIB") under Title II and for Supplemental Security

Income (SSI) under Title XVI of the Social Security Act ("The Act"). *See* 42 U.S.C. §§ 416(i),

423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends the

District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter for

further consideration.

**I. Background**

Tyler filed her application for DIB and SSI on April 23, 2012, alleging June 1, 1995 as

the onset date of disability. [R. at 18.] In her disability report filed in conjunction with her

application, Tyler listed asthma, anxiety, and depression as her disabling conditions.[1] [R. at 164.]

Tyler's application was initially denied on September 21, 2012 and upon reconsideration on

---

[1] Tyler recited the relevant factual and medical background in her opening brief. [*See* Dkt. 16.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 17.] Because these facts involve Tyler's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background the parties' briefs and articulate specific facts as needed below.

1

January 2, 2013. [R. at 64-71, 77-90.] Tyler timely requested a hearing on her application, which

was held before Administrative Law Judge Ronald T. Jordan ("ALJ") on May 27, 2014. [R. at

37.] The ALJ issued his decision on July 11, 2014, again denying Tyler's application for DIB

and SSI. [R. at 15.] On August 17, 2015 the Appeals Council denied Tyler's request to review

the ALJ's decision, making it the final decision of the Commissioner for the purposes of judicial

review. [R. at 1-4.] Tyler timely filed her Complaint with this Court on September 28, 2015,

which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. §

423. Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the

ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful

activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, or one that

significantly limits her ability to perform basic work activities, she is not disabled; (3) if the

claimant's impairment or combination of impairments meets or medically equals any impairment

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is

disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform

her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at

step three and either cannot perform her past relevant work or has no past relevant work but she

can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before

proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1983) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329. 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. Scope of review is confined to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III. The ALJ's Decision

In his decision, the ALJ first determined that Tyler met the insured status requirements of the Act through December 31, 2011, and has not engaged in substantial gainful activity since

3

June 1, 1995. [R. at 20.] At step two, the ALJ found Tyler's severe impairments to include

depression and anxiety. *Id.* Although the ALJ discussed Tyler's history of asthma and asthma

related symptoms at step two, he found the asthma condition was not a severe impairment. [R. at

20-22.] At step three, the ALJ found that Tyler did not have an impairment that meets or

medically equals a Listing by evaluating Listing 12.04 for affective disorders (depression) and

12.06 for anxiety related disorders. [R. at 22-28.]

At step four, "after careful consideration of the entire record," the ALJ determined that

Tyler had the RFC to work "at all exertional levels." [R. at 28.] The ALJ also found the

following limitations:

> [S]he has additional, nonexertional limitations that would permit simple, repetitive
> work that did not require any independent judgment regarding basic work
> processes, and in which work goals, day to day, remained static and predictable.
> The claimant could sustain work for stretches of two hours, but she would need a
> 10- to 15- minute break between each stretch of work to refresh her ability to
> perform work-like tasks. The claimant further could have occasional, superficial
> contact with coworkers and no contact with the general public.

*Id.* After making the RFC assessment, the ALJ found that Tyler has no past relevant work for the

purposes of the step five assessment. *Id.* After considering Tyler's age, education, work

experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in

the national economy that she could perform. [R. at 28-29.] Specifically, the ALJ found that

Tyler could perform the work of a hospital cleaner, power screwdriver operator, and

housekeeper. [R. at 29.] Based on these findings, the ALJ concluded Tyler is not disabled as

defined by the Social Security Act. [R. at 30.]

## IV. Discussion

On appeal, Tyler makes two principal arguments as to why the decision of the

Commissioner should be reversed. First, Tyler argues the ALJ erred in his credibility assessment

by both failing to articulate the S.S.R. 96-7p credibility factors and by improperly basing his decision on gaps in treatment. Second, she argues the ALJ erred when he concluded that her asthma condition was not severe at step two.

### A. Credibility Assessment

Tyler argues the ALJ failed to properly articulate the adverse credibility determination against her. There is a two-step process for evaluating a claimant's symptoms: the ALJ must (1) consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine their effect on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); S.S.R. 96-7p. When symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the credibility of the statements in light of the entire case record. *Id*. To assess credibility, the ALJ must consider factors such as the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; aggravating factors; the type, dosage, effectiveness, and side effects of medications taken by the individual; treatments other than medications; any other measures taken to relieve pain or other symptoms; and any other factors concerning functional limitations due to pain or symptoms. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (citing S.S.R. 96-7p; 20 C.F.R. § 404.1529(c)).

The Court "will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding." *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). ALJ determinations of credibility need not be perfect and are overturned only if they are "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Single conclusory statements regarding credibility are

insufficient; credibility determinations require specific reasons supported by evidence in the

record. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013).

First, Tyler argues the ALJ did not properly articulate the application of S.S.R. 96-7p

factors when assessing her symptoms. For the reasons below, the Court finds the ALJ failed to

properly consider these factors.

Tyler testified that she has panic attacks which cause her heartrate to increase, make her

unable to breathe, and sometimes unable to speak. [R. at 23.] She claimed she lost a job due to

having panic attacks at work and had reported going to the emergency room due to her

depression and panic attacks over the past five years. *Id*. She had also reported poor sleep,

appetite, weight loss, feelings of dread, lack of motivation and energy, daily crying spells and

panic attacks, and that she was easily overwhelmed. *Id*. The ALJ found Tyler's impairments

could be reasonably expected to cause the alleged symptoms. [R. at 27.] However, the ALJ

concluded Tyler's allegations of the intensity, persistence, and limiting effects of these

symptoms were not credible. *Id*.

The ALJ discussed some of the S.S.R. 96-7p factors in his assessment. He mentioned the

effect of Tyler's depression and anxiety on her daily activity [R. at 25] (e.g. household chores,

driving, personal care), factors aggravating the symptoms [R. at 26-27] (social interaction,

mental demands), the frequency of her symptoms [R. at 23] (e.g. daily crying spells, panic

attacks several times a month lasting 45 minutes, seeing shadows, cold sweats), and other

techniques she used to relieve her symptoms [R. at 24] (self-talk, breathing exercises).

To support his credibility determination, the ALJ noted inconsistencies in Tyler's medical

record. For instance, although Tyler claimed disability and counseling for depression and anxiety

since 1995, no evidence of counseling from 1995 to February 2011 was in the record. *Id*. The

only medical records from that time, emergency room visits in 2002 and 2006, made no mention

of any mental problems. *Id*. Further, he noted that Tyler's functioning and work history was

inconsistent with her alleged disability. [R. at 26.] Specifically, from 1997 to 2005 she worked

18 hours a week as a substitute teacher and earned a GED, in 2006 she completed training in

childhood education, and from 2006 to 2009 she worked 25 hours a week as an assistant teacher.

*Id*. He noted that the nature of this past work and study indicated a substantially greater ability to

function socially and tolerate work-related stresses than that alleged by Tyler and her sister. *Id*.

Finally, the ALJ afforded significant weight to the two state medical and psychological

consultants that both reviewed Tyler's file and found her not disabled.[2] [R. at 28.] These

observations led the ALJ to believe Tyler was not credible.

Tyler argues the ALJ's credibility determination fails to specifically mention the side

effects of Tyler's recent depression medications that could affect her ability to work. Indeed, the

ALJ's decision makes no mention of any of the side effects of Tyler's medications. Tyler had

reported taking a variety of depression and anxiety medications with serious side effects such as

drowsiness, headaches, nervousness, and blurred vision. [Dkt. 16 at 14.] She additionally

reported that these medications slow her down and don't allow her to do things for herself. *Id*.

Contrary to S.S.R. 96-7p's requirement to consider the type, dosage, and side effects of all of

Tyler's medications, the ALJ failed to do so.

Similarly, Tyler argues the ALJ improperly used a lack of medical treatment for her

symptoms in his credibility analysis.[3] The ALJ may not solely base his credibility determination

---

[2] Tyler does not challenge the weight given by the ALJ to the state consultant opinion evidence in the record.
[3] Tyler also briefly argues that the ALJ failed to incorporate S.S.R. 82-59 to deny benefits to Tyler for failure to follow prescribed treatment. [Dkt. 16 at 17.] However, S.S.R. 82-59 is applicable only when there is a finding of a disabling impairment. *Id*. at *1. As the ALJ in this case found no such impairment, S.S.R. 82-59 is not implicated here.

on a claimant's failure to seek medical treatment. However, though history of sporadic treatment may be used against a claimant in a credibility assessment, the ALJ must first consider possible explanations for these failures. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); S.S.R. 96-7p.

The ALJ failed to discuss Tyler's possible explanations for treatment irregularities from 2012 to 2014. Put simply, the ALJ improperly drew a negative inference from Tyler's inconsistent medical treatment for her depression and anxiety before considering possible explanations for these irregularities. [R. at 24-26.] At minimum, an ALJ must first explore any reasons for the claimant's inconsistent treatment; for instance, an inability to afford treatment, avoidance of aggravating symptoms of treatment, and intolerable side effects of treatment are commonly accepted justifications for treatment gaps. *Shauger*, 675 F.3d at 696; *Craft*, 539 F.3d at 678-79; S.S.R. 96-7p at *8. The ALJ never questioned Tyler nor sought an explanation on this point before drawing a negative inference in his credibility assessment. This error requires remand. *Id.*

Moreover, the record indicates Tyler may have had such a "good reason" for her sporadic treatment. As indicated by her reports of homelessness made during her hearing with the ALJ [R. at 45, 48], Tyler may have had trouble affording continuous treatment. Or it is possible the many symptoms of her depression and anxiety were minimized by seeking treatment on an as-needed basis. *See* S.S.R. 96-7p at *8. Similarly, she may have sought treatment inconsistently due to anxiety-associated difficulty traveling as she testified she had not driven in 3 years due to her anxiety symptoms [R. at 46.] Unfortunately the Court has no basis upon which to make this determination as the ALJ failed to explore any reason for these treatment gaps.

The Commissioner argues the ALJ did not solely rely on these treatment irregularities in his credibility determination and highlighted the various factors discussed above to justify his decision. However, the court cannot say "with great confidence" the result would be the same on remand if the ALJ had appropriately considered Tyler's sporadic treatment and medicinal side effects, thus these errors were not harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). For the ALJ's failure to consider the effects of Tyler's medications and failure to seek an explanation for Tyler's lack of treatment before drawing a negative inference as to her credibility, the Court finds the ALJ erred in his credibility determination and the decision must be remanded. *Moss*, 555 F.3d at 562-63; *Craft*, 539 F.3d 678-79.

### B. Asthma Condition

Next, Tyler argues the ALJ erred in finding that Tyler's asthma was not severe. At step two the ALJ must determine whether the claimant's impairments, either singly or in combination, are "severe." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment or combination thereof is severe if it "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A finding of a severe impairment at step two is a threshold issue only; as long as the ALJ determines at least one impairment or combination thereof is severe, he will proceed to the remaining steps of the disability process. 20 C.F.R. § 404.1523; *see also Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012); *Castile*, 617 F.3d at 926. In the following steps, the ALJ must consider the combined effects of all impairments even if any one of them is not severe in isolation. 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). For the reasons below, the Court finds the ALJ failed to consider Tyler's asthmatic limitations in the reminder of his analysis after his step two determination.

At step two, the ALJ discussed inconsistencies with Tyler's asthma related claims. Tyler

claimed she had regular asthma flares, four to five emergency room visits a year, and regular

cough and wheezing. [R. at 20-21.] However, the ALJ noted there were no records substantiating

any claims of asthma related hospital admission, emergency room treatment, or urgent care. [R.

at 21-22.] Particularly, the unsubstantiated claims of emergency treatment further cast doubt on

Tyler's claimed sensitivity to environmental factors. [R. at 22.] He then noted Tyler's September

2012 admission that her asthma was doing better; an essentially normal blood gas study from

August 2012; and contrary to Tyler's claims, a general lack of evidence of claimed medical care

for asthma. *Id*. Finally, the ALJ cited the state medical consultant who, after reviewing the

record, found that Tyler had no severe physical impairments. [R. at 28 (citing R. at 304).]

Tyler argues the ALJ ignored evidence that was contrary to his ultimate conclusion.

However, the ALJ also discussed and ultimately discredited as contradictory two pulmonary

function tests from June and July 2012 that supported Tyler's claim. [R. at 21.] Indeed, the

pulmonary functioning tests produced results below the listing requirements.[4] However, he noted

Tyler performed worse during her June test, where she exerted maximal effort, than she did in

her later July test, where she was deemed to not exert maximal effort. *Id*. The logically

inconsistent results in part led him to doubt the June test's validity. *Id*. He then mentioned that

Dr. Kanayo K. Odeluga's consultative exam in June 2012, despite noting indications of

decreased chest wall movement and decreased air entry with vesicular breath sounds, was

otherwise normal; there was no wheezing, rhonchi, or rales, and Tyler showed normal tactile and

---

[4] The June 27, 2012 pulmonary function test, where Tyler was noted to exert maximal effort, Tyler received a pre-bronchodilator $FEV_1$ score of 0.28 and a post-bronchodilator score of 0.39. [R. at 279.] In her July 13, 2012 pulmonary function test, Tyler received a pre-bronchodilator score of 0.50 and a post-bronchodilator score of 0.30. [R. at 297.] However in the second test, the technician wrote that Tyler had not exerted maximal effort and that Tyler explained "the nose piece was stopping her from breathing." *Id*. The relevant Listing 3.02 specifies that a person with Tyler's height meets the listing if they have an $FEV_1$ value of 1.25 or below. 20 C.F.R. pt. 404, subpt. P, App. 1.

vocal fremitus. *Id*. All of these factors, coupled with the "essentially normal" blood gas study

conducted in August 2012, led the ALJ to afford the pulmonary function tests no weight. *Id*.

Although this evidencemay have been enough for the ALJ to deem Tyler's asthma not

severe, he was obligated to continue the evaluation process to determine the cumulative effect of

all impairments on the claimant as long as he deemed *any* of her alleged impairments severe.

*Arnett*, 676 F.3d at 591 *Castile*, 617 F.3d at 926. Any error at step two would be harmless as long

as the ALJ appropriately considered all impairments, severe and not severe, in the remainder of

his RFC analysis. *Id*. The ALJ determined two of Tyler's impairments to be severe. [R. at 20

(depression, anxiety).] Thus, the ALJ's decision was obligated to consider Tyler's asthma in

combination with her anxiety and depression in the remainder of his assessment.

The Court finds the ALJ failed to consider Tyler's asthma symptoms in the remainder of

his decision. Though the ALJ discussed Tyler's claim of severe asthma at step two, he failed to

consider any of her asthmatic symptoms in any other part of the analysis. Particularly, he failed

to include the possible effect of her asthma in combination with her other severe impairments on

her ability to work in the RFC formulation. [R. at 28.] Additionally, the ALJ's hypotheticals to

the VE made no mention of asthmatic limitations. [R. at 55-58.] The ALJ's "elementary error" in

failing to factor *all* of Tyler's limitations in the remainder of his analysis requires remand for

proper consideration. *Terry*, 530 F.3d at 477; *Cole v. Colvin*, No. 1:14-cv-01195-SEB-MJD,

2015 WL 1885452, at *6 (S.D. Ind. Apr. 23, 2015).

The Commissioner points out the job of power screwdriver operator, which the ALJ

found Tyler could perform, is consistent with asthmatic limitations. [Dkt. 17 at 18.] DOT Code

No. 699.685-026. However, the ALJ never discussed any asthmatic limitations in any step

following step two of his opinion, nor whether any of the jobs he specified would accommodate

Tyler's asthma, nor whether any of these jobs would accommodate any possible issues associated with the combined effects of all of Tyler's impairments on her ability to work. The Commissioner may not defend the ALJ using grounds upon which the ALJ did not rely. *Parker*, 597 F.3d at 922-23.

The Court is left unable to determine how much, if at all, the ALJ incorporated Tyler's asthma symptoms into the remainder of his assessment as he fails to mention them in the remainder of his decision. *Terry*, 580 F.3d at 477; *Cole*, 2015 WL 185452 at *6 (finding reversible error at RFC determination where ALJ failed to factor claimant's non-severe fibromyalgia symptoms in combination with other severe impairments). Tyler's asthma symptoms *alone* may not be disabling, but in *combination* with depression and anxiety symptoms may affect her ability to work. Again, the ALJ's decision leaves the Court unable to determine whether he factored the aggregate effect of all of Tyler's impairments throughout his analysis. On remand, the ALJ must factor all of Tyler's impairments, including her asthma, in the steps following his step two determination.

### V. Conclusion

For the aforementioned reasons, the Magistrate Judge recommends the District Judge **REVERSE** and **REMAND** the decision of the Commissioner. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. Civ. P. 72(b), and failure to timely file objections within 14 days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  08 JUL 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.